HARVEY SISKIND LLP
D. PETER HARVEY (SBN 55712)
MATTHEW A. STRATTON (SBN 254080)
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124
pharvey@harveysiskind.com
mstratton@harveysiskind.com

Attorneys for Plaintiff,
PIOLÍN PRODUCCIONES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| PIOLÍN PRODUCCIONES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALVARO VELEZ, and DOES 1-25,<br><br>Defendants. | Case No. C 07-05245 JCS<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**<br><br>Hearing Date: April 25, 2008<br>Time: 9:30 AM<br>Before: Hon. Joseph C. Spero |

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff Piolín Producciones, Inc. (hereinafter variously referred to as "Plaintiff" and "Piolín Producciones") brought this action for cyberpiracy and false designation of origin against Defendant Alvaro Velez (hereinafter variously referred to as "Defendant" and "Velez") on October 15, 2007. Notwithstanding personal service, Velez failed to respond to Piolín Producciones' Complaint and has since failed to appear otherwise in the case. The clerk of the Court entered Velez in default on December 21, 2007.

-1-

On January 25, 2008, Piolín Productions applied for a default judgment for the transfer of the infringing domain name from Velez to Piolín Productions under the Anticybersquatting Consumer Protection Act ("ACPA"). On April 25, 2008, Piolín Productions appeared before the Court to request such relief. At that appearance, the Court requested additional briefing on whether the ACPA applies to unregistered trademarks. Piolín Productions hereby respectfully submits this brief in response to the Court's request. The law is very clear that the ACPA and its remedies protect both registered and unregistered trademarks.

**II.    THE ACPA APPLIES TO UNREGISTERED MARKS**

The ACPA protects trademark owners from "cyberpirates" that register infringing internet domain names with a bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(A). Among the remedies available to victims of cyberpiracy is a court-ordered transfer of the infringing domain name to the owner of the trademark. 15 U.S.C. § 1125(d)(1)(C).

The ACPA protects owners of a "mark." Specifically, the text of the ACPA states that:

> (A) A person shall be liable in a civil action by the owner of a **mark**, including a personal name which is protected as a **mark** under this section, if, without regard to the goods or services of the parties, that person--
> (i) has a bad faith intent to profit from that **mark**, including a personal name which is protected as a **mark** under this section; and
> (ii) registers, traffics in, or uses a domain name that--
> (I) in the case of a **mark** that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that **mark**;

15 U.S.C. § 1125(d)(1)(A)(emphasis added). Similarly, the ACPA makes available to owners of a "mark" the remedy of a court-ordered domain name transfer:

> (C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the **mark**.

15 U.S.C. § 1125(d)(1)(C)(emphasis added).

The ACPA is part of the Lanham Trademark Act, codified in Chapter 22 of Title 15 of the United States Code. To guide construction of the terms used in the Act, Congress included Section 1127, entitled "Construction and definitions; intent of chapter." 15 U.S.C. § 1127. In that section, Congress defined a both a "mark" and a "registered mark." With respect to the former, the section

-2-

states that "[t]he term 'mark' includes *any* trademark, service mark, collective mark, or certification mark." *Id*. (emphasis added). The broad definition of "mark" includes a "trademark," also defined in Section 1127:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof--
>   (1) used by a person, or
>   (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this Act,
> to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

*Id*. Reading the definitions of "mark" and "trademark" together, a "mark" includes "any word" that is "used by a person" "to identify and distinguish his or her goods from those manufactured or sold by others and to indicate the source of the goods." *Id.*

This expansive definition contrasts with the narrower definition of a "registered mark." Section 1127 states that "[t]he term 'registered mark' means a mark registered in the United States Patent and Trademark Office under this Act or under the Act of March 3, 1881, or the Act of February 20, 1905, or the Act of March 19, 1920." 15 U.S.C. § 1127. Because Congress defined both "mark" and "registered mark," it stands to reason that if Congress meant the ACPA to apply only to registered trademarks, it would have done so explicitly.

In light of the foregoing textual analysis, it is not surprising that courts uniformly recognize that the ACPA applies to unregistered marks. For example, the Sixth Circuit has concluded that "[a] trademark need not be registered to be entitled to protection under the ACPA." *DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 205 (6th Cir. Mich. 2004). The Eighth Circuit similarly has held that "[i]n the ACPA Congress added section 43(d) to the Lanham Act and defined cybersquatting as registering or using with a bad faith intent to profit a domain name that is confusingly similar to a registered **or unregistered mark** or dilutive of a famous mark." *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. Minn. 2004)(emphasis added). Likewise, the First Circuit states that:

> The ACPA says "mark," not "registered mark," which § 1127 defines separately. Section 1127 defines "mark" to include "any trademark" and that same section defines "trademark" as "any word, name, symbol, or device . . . (1) used by a person, or (2) which a person has a bona fide intention to use in

-3-

commerce and applies to register on the principal register . . ., to identify and distinguish his or her goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127. "Mark owner" must be understood against the backdrop of U.S. trademark law, which provides some protections to unregistered marks.

*Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 24 (1st Cir. Mass. 2001)

Leading treatises on trademark law agree that the ACPA applies to both registered and unregistered trademarks. For example, *McCarthy on Trademarks and Unfair Competition* states:

> In short, the Act defines the outlawed conduct of cybersquatting as registering, with the bad faith intent to profit, a domain name that is confusingly similar to a registered or **unregistered mark** or dilutive of a famous mark.

4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:78 (4th ed. 2008) (emphasis added). The treatise later states:

> The kind of intellectual property protected by the trademark portion of the Anticybersquatting Act is a "mark." The Lanham Act defines "mark" as including "any trademark, service mark, collective mark, or certification mark." **Thus, there is no requirement that the protected "mark" be registered: unregistered common law marks are protected by the Act**.

*Id.* (emphasis added). Similarly, *The Law of Internet Disputes* states:

> The Anticybersquatting Act protects many types of trademarks. In addition to federally registered marks, it clearly applies to *unregistered* marks used in the United States, as well.

DAVID W. QUINTO, THE LAW OF INTERNET DISPUTES § 3.04(B) (2003)(emphasis in the original).

///

///

///

///

///

///

///

///

///

-4-

### III. CONCLUSION

Because Piolín Productions enjoys exclusive rights in the unregistered PIOLÍN and PIOLÍMOVIL marks, it is protected by the provisions of the ACPA. Piolín Productions hereby respectfully requests that the Court order the transfer of the infringing domain name Piolimovil.com from Velez to Piolín Productions pursuant to 15 U.S.C. § 1125(d)(1)(C).

Dated: May 2, 2008

Respectfully submitted,

HARVEY SISKIND LLP

By: _____/s/_____
     Matthew A. Stratton

Attorneys for Plaintiff,
PIOLÍN PRODUCTIONS, INC.

## PROOF OF SERVICE

The undersigned declares: I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 4 Embarcadero Center, 39th Floor, San Francisco, CA 94111.

On the date stated below, I served the following documents:

- **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Mr. Alvaro Velez
16 Wall Street
Norwalk, CT 06850-3408

__X__    **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

_____    **FEDERAL EXPRESS – OVERNIGHT DELIVERY:** I caused such envelope to be deposited with the Federal Express Office prior to the cut-off time for next day delivery with a shipping label properly filled out with delivery to be made to the addressee designated.

_____    **HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the addressee(s) designated.

_____    **VIA FAX:** The facsimile machine I used complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

__X__    **(FEDERAL):** I declare that I am employed by the office of a member of the bar of this court at whose direction the service was made.

_____    **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 2, 2008 at San Francisco, California.

_____
Cynthia Lee