UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIOLIN PRODUCTIONS, INC., | No. C-07-05245 JCS |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION RE APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT [Docket No. 14]** |
| ALVARO VELEZ, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, Piolin Productions, Inc. ("Piolin Productions"), filed a complaint seeking an injunction requiring the transfer of the domain name Piolimovil.com from Defendant, Alvaro Velez ("Velez"), to Piolin Productions and prohibiting Velez from using any domain name that uses or is confusingly similar to any mark owned by Piolin Productions. Velez did not answer or otherwise respond to the Complaint and the Clerk entered default pursuant to Fed.R.Civ.P. 55(a) on December 21, 2007. Plaintiff now brings a motion requesting that the Court enter default judgment in its favor and award injunctive relief (the "Motion"). A hearing on the Motion was held on Friday, April 25, 2008, at 9:30 a.m. Plaintiff filed a supplemental brief on May 2, 2008. For the reasons stated below, it is recommended that the Motion be GRANTED.

## II. BACKGROUND

### A. Factual Background

This action is based on Velez's use of the domain name Piolimovil.com. Complaint at 1. Piolin Productions owns the mark "Piolimovil" and has not authorized Velez to use its mark in his domain name. *Id*. at 1-2; *see also* Declaration of Jeannette M. Boudreau in Support of Plaintiff's

Application for Entry of Default Judgment by the Court ("Boudreau Decl."), ¶¶ 5, 7. Plaintiff stipulated at oral argument that the Piolimovil mark is not registered with the Patent and Trademark Office.

"Piolin" is the nickname of radio personality Eduardo Piolin Sotelo. Complaint. at 1; Boudreau Decl., ¶ 3. Mr. Sotelo acquired the nickname "El Piolin" in 1988. Complaint at 3; Boudreau Decl., ¶ 3. He has been broadcasting since 1989, and since 2001 has been the host of a highly successful Spanish language radio show, "Piolin por la Mañana." Complaint at 3; Boudreau Decl., ¶ 3. Many of the radio stations that broadcast Piolin por la Mañana maintain a fleet of vehicles, known as "Piolimovil," that bear the name and likeness of Piolin. Complaint at 3; Boudreau Decl., ¶ 4. For example, in Los Angeles, there are approximately 6 Piolimovil vehicles. Complaint at 3; Boudreau Decl., ¶ 4. The Piolomovil vehicles travel throughout the media markets where Piolin por la Mañana is broadcast to facilitate the show's promotional events and they are well-known to the show's listeners. Complaint at 3; Boudreau Decl., ¶ 4. Through long usage and substantial advertising and promotion, the marks "Piolin" and "Piolimovil" have acquired secondary meaning, that is, they are associated with Eduardo Piolin Sotelo and his radio program in the minds of the consuming public. Complaint at 3. Sotelo assigned ownership of the Piolin and Piolimovil marks to Piolin Productions in October 2007. Complaint at 3; Boudreau Decl., ¶ 5.

At the time the Complaint was filed, Velez operated a Spanish-language interactive ecommerce website under the domain name Piolimovil.com that offered for sale clothing and Western wear and featured an unauthorized image of Mr. Sotelo and the word "Piolitienda" ("Piolin store"). Complaint at 4. Velez registered this website on June 7, 2007, using the registrar Melbourne IT, Ltd. d/b/a Internet Names Worldwide ("Melbourne IT"). Complaint at 3-4; Declaration of Matthew A. Stratton in Support of Plaintiff's Application for Entry of Default Judgment by the Court ("Stratton Decl."), ¶ 8. After being contacted by Plaintiff's attorneys on August 27, 2007, Velez removed the image of Mr. Sotelo and the word "Piolitienda" (Piolin store) from his web site. Boudreau Decl., ¶¶ 6, 8. However, he refused to transfer the domain name to Piolin Productions, instead demanding payment of $3,000 for transfer of the domain name.

2

Boudreau Decl., ¶ 8. It is the policy of Melbourne IT to transfer domain name registrations when ordered to do so by a court of competent jurisdiction. Stratton Decl., ¶ 9.

Plaintiff filed the Complaint in this action on October 15, 2007, asserting claims for: 1) cyberpiracy in violation of 15 U.S.C.§ 1125(d); and 2) false designation of origin in violation of 15 U.S.C. § 1125(a). The Complaint was personally served on Velez on November 1, 2007. Docket No. 6.

### B. The Motion

In the Motion, Plaintiff seeks entry of default judgment against Velez and an injunction pursuant to 15 U.S.C. § 1125(d)(1)(C) requiring Melbourne IT to transfer the domain name Piolimovil.com to Piolin Productions and further prohibiting Velez from obtaining or using any domain name that incorporates or is confusingly similar to any mark owned by Piolin Productions.[1] At oral argument, Plaintiff limited its request to the first form of injunctive relief, namely, transfer of the domain name to Piolin Productions.

### III. ANALYSIS

#### A. Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment). The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material

---

[1] Although Plaintiff requested an award of compensatory damages, treble damages, attorneys' fees and costs in the Complaint, it does not seek any of these remedies in the Motion.

3

> facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c).

**B.  *Eitel* Factors**

**1. Excusable Neglect**

There is no evidence in the record that Velez's failure to appear was a result of excusable neglect. Rather, Velez failed to appear after the complaint in this action was personally served upon him, indicating that his failure to appear was willful. This factor therefore favors entry of default judgment.

**2. Possibility of Prejudice to Plaintiff**

To the extent that Velez has refused to give up a domain name that uses Plaintiff's mark, Piolin Productions will be prejudiced if the Court does not enter default judgment in its favor. This factor therefore favors entry of default judgment.

**3. Allegations and Substantive Merits of Claims**

Plaintiff's claim for cyberpiracy is asserted under 15 U.S.C. § 1125(d)(1), which provides, in relevant part, as follows:

> (d) Cyberpiracy prevention
>
>   (1)(A) A person shall be liable in a civil action by the owner of a

4

>    mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
>>        (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>>
>>        (ii) registers, traffics in, or uses a domain name that
>>
>>>            (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>>
>>>            (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.
>
>    . . .
>
>    (C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark

15 U.S.C. § 1125(d).

In this case, Plaintiff has alleged and provided evidence that it owns the mark "Piolimovil" and that it is distinctive.[2] It has also alleged and provided evidence that Velez has registered a domain name that is confusingly similar to the "Piolimovil" mark. *See Broadbridge Media, L.L.C. v. Hypercd.com*, 106 F. Supp. 2d 505, 510 (S.D.N.Y. 2000) (holding that domain name "hypercd.com was confusingly similar – if not identical – to mark HyperCD). Finally, Plaintiff has provided evidence that Velez refused to transfer the domain name to Plaintiff when contacted by Plaintiff's counsel, demanding $3000 for the transfer, even though Velez is no longer using the domain name to sell any goods or services. In addition, there is no evidence that Velez had any intellectual property rights in the "piolimovil" mark prior to registering the domain name and the domain name does not consist in any way of the legal name of Defendant. This evidence is

---

[2] Although the mark "Piolimovil" is not registered with the Patent and Trademark Office, the mark is, nonetheless, entitled to protection on the basis that it has been widely used in the commercial market. *See DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. 2004).

*United States District Court — For the Northern District of California*

sufficient to establish a bad faith intent to profit. *See id*; 15 U.S.C. § 1125(d)(1)(B) (listing factors that may be considered in determining whether there is a bad faith intent to profit). Accordingly, the allegations and evidence support entry of default judgment in favor of Plaintiff.

### 4. Sum of Money at Stake

Plaintiff does not seek any money damages, attorneys' fees, or costs. Plaintiff only seeks transfer of the domain name. Therefore, this factor favors entry of default judgment in Plaintiff's favor.

Based on the factors discussed above, the Court concludes that default judgment should be entered in Plaintiff's favor.

### D. Remedy

Because Plaintiff has alleged the necessary elements of a cyberpiracy claim and further provided evidence in support of those allegations, Plaintiff is entitled to an injunction transferring the domain name "piolimovil.com" to Plaintiff. 15 U.S.C. § 1125(d)(1)(C).[3]

### IV. CONCLUSION

For the reasons stated above, it is recommended that the Motion be GRANTED and that default judgment be entered in favor of Plaintiff. In addition, the following injunction should be entered:

IT IS HEREBY ORDERED that Defendant, Alvaro Velez, and registrar Melbourne IT, Ltd., d/b/a Internet Names Worldwide forthwith transfer and assign the domain name Piolimovil.com to Piolin Productions.

Dated: May 7, 2008

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[3] At oral argument, the Court expressed doubt about the authority cited by Plaintiff in support of its request for broader injunctive relief prohibiting Defendant from registering any domain name using a mark owned by Piolin Productions or that is confusingly similar to a mark owned by Piolin Productions. In response, Piolin Productions agreed to drop that request.