HARVEY SISKIND LLP
D. PETER HARVEY (SBN 55712)
MATTHEW A. STRATTON (SBN 254080)
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124
pharvey@harveysiskind.com
mstratton@harveysiskind.com

Attorneys for Plaintiff,
PIOLÍN PRODUCTIONS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PIOLÍN PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALVARO VELEZ, and DOES 1-25,<br><br>Defendants. | Case No. C 07-05245 RMW<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE JURISDICTION IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**<br><br>Hearing Date: July 25, 2008<br>Time: 9:00 AM<br>Before: Hon. Ronald M. Whyte |

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff Piolín Productions, Inc. (hereinafter variously referred to as "Plaintiff" and "Piolín Productions") filed this action on October 15, 2007 for cyberpiracy and false designation of origin against Defendant Alvaro Velez (hereinafter variously referred to as "Defendant" and "Velez"). Upon proof of Defendant's default, U.S. Magistrate Judge Joseph Spero on May 7, 2008 recommended that a default judgment be entered. The Court has now indicated that it is prepared to

adopt the magistrate judge's recommendation, but has asked for a supplemental brief confirming the basis for the Court's *in personam* jurisdiction.[1]

The underlying facts are as follows: Eduardo "Piolín" Sotelo is a radio personality who has been in broadcasting since 1989.[2] He has since been continuously associated with the "Piolín" name. Mr. Sotelo is a California resident and broadcasts primarily from Los Angeles, California. Mr. Sotelo p/k/a "Piolín" is the host of the highly successful Spanish-language radio show "Piolín por la Mañana." His popularity among Spanish-speaking audiences cannot be overstated: the show is the top radio program in Los Angeles and, at various times, is the number-one rated radio program in the United States, regardless of language.

A number of the major radio stations that broadcast "Piolín por la Mañana" maintain a fleet of vehicles, each known as a "Piolímovil," that bear the name and likeness of Piolín. "Los Piolímoviles" facilitate the show's promotional events. In Los Angeles, for example, there are approximately six Piolímovil vehicles. These vehicles are highly visible and commonly known among the show's audience, both in California and nationally. Through long usage and substantial advertising and promotion, the marks PIOLÍN and PIOLÍMOVIL have acquired secondary meaning, i.e., they uniquely refer to Plaintiff and its services, i.e., Eddie "Piolín" Sotelo and his radio program, in the minds of the consuming public. Mr. Sotelo assigned ownership of the PIOLÍN and PIOLÍMOVIL marks, among others, to Piolín Productions in October 2007. Piolín Productions is a California corporation with its principal place of business in Calabasas, California.

Velez is believed to live and work in Norwalk, Connecticut. Notwithstanding Piolín Productions' exclusive rights in the PIOLÍN and PIOLÍMOVIL marks, Velez registered the domain

---

[1] While this brief makes clear that the Court has personal jurisdiction over Velez, *in rem* jurisdiction over the infringing domain name itself is available under 15 USCS § 1125(d)(2) in the judicial district in which the applicable domain name registrar is located. Here, the registrar Melbourne IT, Ltd., d/b/a Internet Names Worldwide is located in Emeryville, California—within this judicial district.

[2] The facts summarized herein are substantiated by the Declaration of Jeannette M. Boudreau in Support of Motion for Default Judgment, filed herein on January 25, 2008 as Docket No. 16, and the Declaration of Matthew A. Stratton in Support of Motion for Default Judgment, filed herein on January 25, 2008 as Docket No. 17.

-2-

name Piolimovil.com on June 7, 2007 via registrar Melbourne IT, Ltd., d/b/a Internet Names Worldwide. Following registration, Defendant has operated a Spanish-language e-commerce website under the domain name Piolimovil.com, offering clothing and western wear for sale. The site is aimed at Spanish-speaking consumers and offers products organized by Latin American country. The site initially featured an unauthorized image of Mr. Sotelo standing in front of a Piolímovil, the word "Piolítienda" (or "Piolín's store"), and the Piolín por la Mañana logo. Declaration of Matthew A. Stratton, August 1, 2008, ("Stratton Dec., Aug. 1, 2008") ¶ 3, and Exhibit B thereto. Defendant later removed said content after being contacted by Plaintiff's counsel. Velez ultimately demanded $3,000 to release the domain name to Piolín Productions.

On October 15, 2007, Piolín Productions filed suit against Velez for cyberpiracy and false designation of origin. Notwithstanding personal service, Velez failed to respond to Piolín Productions' Complaint and has since failed to appear otherwise in the case. The clerk of the Court entered Velez in default on December 21, 2007. On January 25, 2008, Piolín Productions applied for a default judgment for the transfer of the infringing domain name from Velez to Piolín Productions under the Anticybersquatting Consumer Protection Act ("ACPA"). On April 25, 2008, Piolín Productions appeared before the Court to request such relief. On May 7, 2008, Magistrate Judge Spero issued a Report and Recommendation that Piolín Productions' Motion for Default Judgment be granted.

Judge Spero's Report and Recommendation further concluded that the following injunction should issue: "IT IS HEREBY ORDERED that Defendant, Alvaro Velez, and registrar Melbourne IT, Ltd., d/b/a Internet Names Worldwide forthwith transfer and assign the domain name Piolimovil.com to Piolín Productions." On May 7, 2008, the Report and Recommendation was assigned to U.S. District Court Judge Ronald M. Whyte for decision. On July 25, 2008, the Court ordered additional briefing on whether the Court has personal jurisdiction over Velez.

Piolín Productions hereby respectfully submits this brief in response to the Court's request. The law is clear that this Court enjoys personal jurisdiction over Velez. This Court has the power to

-3-

order the transfer of the infringing domain name Piolimovil.com from Velez to Piolín Productions, its rightful owner.

## II. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT VELEZ

The exercise of personal jurisdiction over a nonresident defendant is tested by a two-part analysis: (1) it must satisfy the requirements of the applicable state long-arm statute and (2) it must comport with federal due process. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). California's long-arm statute states that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10. In other words, the statute allows courts to exercise jurisdiction to the limits of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005). The two-part analysis therefore is a single inquiry: whether exercise of personal jurisdiction comports with due process. *Id.*

To exercise personal jurisdiction, due process requires that a defendant have sufficient "minimum contacts" with the forum state such that maintenance of the suit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nature and quality of the necessary contacts required vary depending on the type of personal jurisdiction asserted, either general or specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Here, Piolín Productions asserts that the court has specific jurisdiction over Velez.

### A. Specific Jurisdiction Analysis

The Ninth Circuit applies a three-part test to determine if a district court may exercise specific jurisdiction: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. Cal. 1998) (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).

-4-

      i.    Purposeful Availment

The purposeful availment requirement seeks to prevent a nonresident defendant from being haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Burger King,* 471 U.S. at 475. This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.*

In the context of the Internet, where a nonresident defendant may negatively impact others across the country without leaving home, courts examine the defendant's online conduct. "The likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The result is a "sliding scale approach" to use when evaluating online activity:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. Compuserve, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1996 (E.D.Mo. 1996).

*Zippo*, 952 F. Supp. at 1124. In effect, the more interactive and commercial a website is, the more likely a court will find personal jurisdiction. *Id.*

Here, Velez is believed to live in Norwalk, Connecticut. However, he registered the domain name Piolimovil.com though registrar Melbourne IT, Ltd., d/b/a Internet Names Worldwide, with its U.S. location in Emeryville, California. Using Piolimovil.com, Velez built and operated a website

-5-

1 that is clearly commercial in nature and highly interactive.  It offers numerous items of western-style 2 clothing that users can purchase online using credit cards or PayPal.  Stratton Dec., Aug. 1, 2008, ¶ 2, 3 and Exhibit A thereto.  The site prominently displays logos of the many credit cards types accepted. 4 *Id.*  Piolimovil.com does not merely target purchasers in Connecticut.  Instead, it actively reaches out 5 to purchasers nationwide, including California, by offering free shipping and handling in the lower 48 6 states: "Manejo y Envio Gratis dentro de los 48 Estados."  *Id.*  While Piolín Productions cannot 7 confirm the number of sales Piolimovil.com transacted with California purchasers (Velez refuses to 8 appear in this matter and therefore discovery is not possible), Piolimovil.com appears capable of the 9 "knowing and repeated" transactions with California purchasers that gave rise to personal jurisdiction 10 in *Compuserve*.  *Compuserve*, 89 F.3d at 1268-69.

11 Personal jurisdiction is also favored here under the "effects doctrine."  For online intentional 12 torts, such as the trademark claims of cyberpiracy and false designation of origin, the purposeful 13 availment requirement may also be satisfied by examining the torts' effects.  *Panavision*, 141 F.3d at 14 1321; *see Calder v. Jones*, 465 U.S. 783 (1984).  The effects doctrine finds personal jurisdiction 15 where defendant's conduct is aimed at or has an effect in the forum state.  *Id.*  It is beyond dispute 16 that the effects of trademark violations occur in the forum where consumer confusion is likely to 17 occur and where the plaintiff's business is harmed.  *See Sutter Home Winery, Inc. v. Madrona* 18 *Vineyards, L.P.*, 2005 U.S. Dist. 4581 at *13 n.2  (N.D. Cal. 2005) ("In a trademark infringement 19 action, 'the actionable wrong takes place both where infringing labels are affixed to the goods and 20 where confusion of purchasers is likely to occur.'") (citations omitted) (Patel, J.); *Sidco Indus. Inc. v.* 21 *Wimar Tahoe Corp.*, 768 F.Supp. 1343, 1346-1347 (D. Or. 1991) ("The cause of action for a 22 trademark violation arises in the place where the confusion is likely to occur") (citing *Sykes Lab., Inc.* 23 *v. Kalvin*, 610 F.Supp. 849, 860 n. 8 (C.D. Cal. 1985)); *Panavision* 141 F.3d at 1321-1322 ("Because 24 the Indianapolis Colts used their trademarks in Indiana, any infringement of those marks would create 25 an injury which would be felt mainly in Indiana, and this, coupled with the defendant's 'entry' into 26 the state by the television broadcasts, was sufficient for the exercise of personal jurisdiction.") (citing

27
28

-6-

1  and quoting *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d
2  410 (7th Cir. 1994)).

3  Here, California consumers are most likely to be confused by Velez's Piolimovil.com. Piolín
4  is a California broadcaster who operates out of Los Angeles. He is wildly popular nationally among
5  the Spanish-speaking community, a substantial portion of which resides in California. "Piolín por la
6  Mañana" is continuously the top-rated radio show, regardless of language, in Los Angeles and
7  elsewhere in California. A very prominent fleet of "Piolímoviles" travels throughout the streets of
8  both Los Angeles and San Francisco. Piolín Productions is a California corporation with its principal
9  place of business in Calabasas, California. Therefore, it seems very likely that California consumers
10 suffered confusion and Piolín Productions suffered harm from Piolimovil.com in California.

11            ii.      Defendant's Forum-Related Activities

12 The second prong in the Ninth Circuit's test for specific, personal jurisdiction is that the claim
13 asserted arises out of defendant's forum-related activities. *Francisco Ziegler v. Indian River County*,
14 64 F.3d 470, 474 (9th Cir. 1995). The *Panavision* court characterizes this prong as asking whether
15 plaintiff would have been injured "but for" defendant's conduct directed toward plaintiff in
16 California. *Panavision,* 141 F.3d at 1322. Here, the prong is easily satisfied. There is no question
17 that "but for" Velez's registration and operation of his interactive, commercial website
18 Piolimovil.com, the consumer confusion and harm to Piolín Productions would not have occurred.

19            iii.     Reasonableness

20 To determine reasonableness, the Ninth Circuit considers seven factors: (1) the extent of a
21 defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the
22 extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in
23 adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the
24 importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the
25 existence of an alternative forum. *Burger King*, 471 U.S. at 476-77. The burden is on the defendant
26 to show unreasonableness. *Id.* ("Where a defendant who purposefully has directed his activities at

1    forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of
2    some other considerations would render jurisdiction unreasonable.")

3          Here, Velez refused to respond or appear in this matter, despite personal service of the
4    complaint and service of all subsequent notices by Plaintiff.  Were he to argue here that personal
5    jurisdiction is unreasonable, he would lose under the factors enumerated above.  Specifically, under
6    factor (1), Velez's commercial, interactive website was aimed at California.  Piolimovil.com has
7    attempted to confuse consumers that it is affiliated with Piolín—a prominent California personality
8    with a tremendous California fan base.  The site has offered free shipping of orders to California.
9    Velez used a California registrar to register the infringing domain name.  It should not surprise Velez
10   that he is being sued in California.  Factor (2) favors Piolín Productions because unless the
11   "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear
12   justifications for the exercise of jurisdiction."  *Caruth v. International Psychoanalytical Ass'n*, 59
13   F.3d 126, 128-29 (9th Cir. 1995) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)).
14   Here, modern technology and efficient travel options do not impose an unreasonable burden on Velez
15   to participate in this case.

16         Factor (3) favors Piolín Productions, as there are no sovereignty conflicts between California
17   and an alternative forum.  This action is based on U.S. trademark laws, including the
18   Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), which applies equally throughout
19   the U.S.  Factor (4) examines the forum state's interest in adjudicating this matter.  Here, Piolín
20   Productions, a California corporation, seeks relief and "California maintains a strong interest in
21   providing an effective means of redress for its residents tortiously injured."  *Gordy v. Daily News,
22   L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200
23   (9th Cir. 1988)).  Under factor (5), California is the most efficient forum to resolve this dispute
24   because witnesses and evidence—such as confused consumers, los Piolímoviles, the domain name
25   registrar, and Piolín himself—are all located in California.  Factor (6) considers the importance of the
26   forum to Piolín Productions.  Because the corporation is located in California, along with Piolín's
27   witnesses and evidence, is it important that the suit be adjudicated in California.  Lastly, factor (7)
28

-8-

1 considers the existence of an alternative forum.  This factor is neutral, as every U.S. District Court
2 has the authority to consider this federal trademark claim.
3       Ultimately, the above *Burger King* factors strongly favor this Court's exercise of personal
4 jurisdiction over Velez.

**III.    CONCLUSION**

Because the court has personal jurisdiction over Velez, Piolín Productions hereby respectfully requests that the Court order the transfer of the infringing domain name Piolimovil.com from Velez to Piolín Productions pursuant to 15 U.S.C. § 1125(d)(1)(C).

Dated:  August 1, 2008                                     Respectfully submitted,

                                              HARVEY SISKIND LLP
                                              D. PETER HARVEY
                                              MATTHEW A. STRATTON

                                              By: _____/s/_____
                                                          Matthew A. Stratton

                                              Attorneys for Plaintiff,
                                              PIOLÍN PRODUCTIONS, INC.